2025 IL App (1st) 241260

No. 1-24-1260

First Division

August 25, 2025

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 2829 |
| | ) | |
| CARMEN COX, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Carmen Cox appeals from the circuit court's dismissal of his *pro se* petition for relief from judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)). On appeal, defendant contends, for the first time, that his conviction for unlawful use or possession of a weapon by a felon (UUWF) is void and must be vacated because the UUWF statute is facially unconstitutional pursuant to the second amendment of the United States Constitution (U.S. Const., amend. II) and article I, section 22 of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). We affirm.

¶ 2                                              BACKGROUND

¶ 3      We relate only those facts necessary to the disposition of this appeal.

¶ 4      On March 7, 2014, defendant entered a negotiated plea of guilty to UUWF (720 ILCS 5/24-1.1(a) (West 2008)) and was sentenced to three years in prison. He unsuccessfully sought to withdraw his plea. See *People v. Cox*, No. 1-14-2132 (2016) (unpublished summary order under Illinois Supreme Court Rule 23(c)); *People v. Cox*, 2021 IL App (1st) 190491-U.

¶ 5      On April 24, 2019, defendant filed a *pro se* motion to vacate the conviction and render judgment void alleging that his conviction for "aggravated unlawful use of a weapon, hereinafter AUUW" must be vacated in light of *People v. Aguilar*, 2013 IL 112116.

¶ 6      On October 19, 2022, the State filed a motion to dismiss alleging that *Aguilar* was inapplicable because defendant plead guilty to UUWF. On June 5, 2024, the circuit court granted the motion.

¶ 7                                                ANALYSIS

¶ 8      On appeal, defendant contends, for the first time, that his UUWF conviction is void because the UUWF statute is facially unconstitutional under the second amendment of the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). He relies on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), to argue that "states cannot justify firearms regulations on the basis that they simply represent sound policy choices" and that only statutes with "robust pedigrees" are permitted.

¶ 9      A constitutional challenge to a statute may be facial or as-applied. *People v. Rizzo*, 2016 IL 118599, ¶ 24. Defendant here argues that the UUWF statute is unconstitutional on its face. A

defendant may challenge the facial constitutionality of a statute at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32.

¶ 10    A defendant raising a constitutional challenge to a statute carries the heavy burden to rebut the strong judicial presumption that the challenged statute is constitutional. *Rizzo*, 2016 IL 118599, ¶ 23. To overcome this presumption, the defendant must clearly establish that the statute violates the constitution. *Id.* However, courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving doubts in favor of its validity. *Id.* Whether a statute is constitutional is a matter of law that we review *de novo*. *Id.*

¶ 11    A facial challenge requires the challenging party to show that the statute is unconstitutional under any set of facts, whereas an as-applied challenge depends on the particular facts and circumstances of an individual case. *Id.* ¶ 24. A facially unconstitutional statute is void *ab initio*, meaning that "the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Thompson*, 2015 IL 118151, ¶ 32. However, a defendant raising a facial challenge has a particularly heavy burden, as the fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rizzo*, 2016 IL 118599, ¶ 24.

¶ 12    Pursuant to the second amendment, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 13    The United States Supreme Court has "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun" inside and outside the home "for self-defense." *Bruen*, 597 U.S. at 8-10. In *Bruen*, the Supreme Court

announced a new analytical framework for evaluating the constitutionality of firearm regulations. First, courts must determine whether the Second Amendment's "plain text" covers an individual's conduct. *Id.* at 24. If it does, "the Constitution presumptively protects that conduct," and the State has the burden to justify a regulation by showing it is consistent with our country's history of firearm regulation. *Id.*

¶ 14 This court has rejected facial constitutional challenges to the UUWF statute based upon the *Bruen* framework. See, *e.g.*, *People v. Boss*, 2025 IL App (1st) 221855, ¶¶ 17-36; *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 21-33; *People v. Grace*, 2025 IL App (1st) 232429-U, ¶¶ 10-26; *People v. Avalos*, 2025 IL App (1st) 230874-U, ¶¶ 71-79; *People v. Wright*, 2024 IL App (1st) 230428-U, ¶¶ 10-20*;* see Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025) (nonprecedential orders entered under Rule 23(b) on or after January 1, 2021, may be cited for persuasive purposes).

¶ 15 Defendant, however, contends that there are no "compelling historical analogues" for permanent disarmament based upon a prior felony or "significant" imprisonment for that possession. We disagree.

¶ 16 First, the UUWF statute does not permanently ban felon firearm possession. A convicted felon may lawfully possess a firearm if he or she "has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act [(430 ILCS 65/10 (West 2024))]." See 720 ILCS 5/24-1.1(a) (West 2024); see also *United States v. Calhoun*, 710 F. Supp. 3d 575, 593 (N.D. Ill. 2024) (a felon can regain the right to own firearms via expungement or pardon).

¶ 17 Second, there are historical analogues, that is, a comparable tradition of disarmament premised on legal disobedience. See *Bruen*, 597 U.S. at 29-30 (a proper analogue does not require

a "historical *twin*," as historical and modern-day regulations are sufficiently analogous if they "impose a comparable burden on the right of armed self-defense" that is "comparably justified" (emphasis in original)).

¶ 18    In *United States v. Rahimi*, 602 U.S. 680, 699 (2024), the Supreme Court, while reaffirming the *Bruen* analysis, stated that its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) "never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home." The Court explained that *Heller* "stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626, 627 n.26).

¶ 19    In *Rahimi*, the Supreme Court rejected a facial challenge to a federal statute that prohibited firearm possession by a person subject to a domestic violence restraining order that protected an intimate partner or that partner's child. *Id.* at 688, 693, 698-99. The Court determined that the statute was not facially invalid, given that one basis for prohibiting firearm possession by the subject of the order was that he or she presented a credible threat to the physical safety of the intimate partner or the partner's child. *Id.* at 699-700.

¶ 20    The Court did not analyze the first step of the *Bruen* test; rather, the Court only considered whether the statute was consistent with our Nation's history of firearms regulation. See *id.* at 690. After reviewing the historical context of the statute, the Court determined that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700. The Court therefore concluded that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at 702.

¶ 21    As we have noted, founding-era "legislatures prescribed death or forfeiture of a person's entire estate (presumably including firearms) as punishment for numerous non-violent crimes (including deceit, forgery, and wrongful taking of property)." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 96. In *Brooks*, we also identified historical analogues that disarmed religious, racial, and political minority groups based on the assumption that their status signified an inclination to disobey the law. *Id.* ¶ 94; see also *United States v. Jackson*, 700 F. Supp. 3d 651, 660 (N.D. Ill. 2023) ("*Bruen* directs courts to examine historical analogues to determine the historical understanding of the right to keep and bear arms, *** and laws disarming enslaved people, religious minorities, and Native Americans *** fit that bill." (Internal quotation marks omitted.)). Moreover, colonial prohibitions for "disavowal of the rule of law" and regulations disarming "Catholics, Native Americans and Blacks," as well as those who did not demonstrate allegiance during the Revolutionary War period demonstrate the authority of founding-era legislatures to categorically restrict firearm possession based upon legally adverse conduct. (Internal quotation marks omitted.) *United States v. Ware*, 673 F. Supp. 3d 947, 958-59 (S.D. Ill. 2023).

¶ 22    As we concluded in *Brooks*, "the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society." (Internal quotation marks omitted.) *Brooks*, 2023 IL App (1st) 200435, ¶ 100. Felony convictions demonstrate a disrespect for legal norms. See *Heller*, 554 U.S. at 626-27 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons").

¶ 23 We therefore conclude that the UUWF statute is facially constitutional under the second amendment of the United States Constitution as it comports with a longstanding tradition of disarming individuals based upon criminal conduct.

¶ 24 In the alternative, defendant contends in his opening brief that, "at a minimum," article I, section 22 of the Illinois Constitution "endows individual citizens, including those with prior felonies, the presumptive right to possess a firearm."

¶ 25 The Illinois Constitution provides that, "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22.

¶ 26 As our supreme court explained, the addition of the phrase " '[s]ubject only to the police power,' " to the Illinois Constitution was intended to provide an " 'extraordinary degree of control' " over the possession and use of arms due to the " 'extraordinary threat to the safety and good order of society' " they pose. *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491-92 (1984) (quoting 6 Record of Proceedings, Sixth Illinois Constitutional Convention 84, 87-88 (committee proposals)).

¶ 27 This court has repeatedly rejected the argument that the Illinois Constitution forbids the General Assembly from passing a law prohibiting felons from possessing firearms. See *People v. Stephens*, 2024 IL App (5th) 220828, ¶¶ 41-44 ("the Illinois Constitution's prohibition of the possession of firearms by felons is a proper exercise of police power"); *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 24-28, 30 ("nothing in article I, section 22, of the Illinois Constitution suggests that the right to bear arms is unlimited and bars the State from prohibiting felons from bearing arms"); *Travis*, 2024 IL App (3d) 230113, ¶¶ 39-43 ("We find the [armed habitual criminal] and UUWF statutes are a proper exercise of the state's police power, which allows the

state to exert, through legislation, control over the dangers posed by firearms and the people who might use them to do harm."). We find no reason to depart from these well-reasoned holdings.

¶ 28     Accordingly, the UUWF statute is constitutional under both the second amendment to the United States Constitution and article I, section 22, of the Illinois Constitution.

¶ 29                                    CONCLUSION

¶ 30     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 31     Affirmed.

---

*People v. Cox*, **2025 IL App (1st) 241260**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 09-CR-2829; the Hon. Kenneth J. Wadas, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ian R. Jackson, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, David H. Iskowich, and Retha Stotts, Assistant State's Attorneys, of counsel), for the People. |